ANNIE G. ALLEN, *Appellant*, v. MAE W. LAMON and S. P. LAMON, her husband, and BISCAYNE TRUST COMPANY, a Florida Corporation, as Trustee, *Appellees*.

Division B.

Opinion filed May 8, 1930.

*Burdine, Terry & Fleming,* for Appellant;

*Stapp, Gourley, Vining & Ward,* for Appellees.

BUFORD, J.—This was a suit to foreclose a mortgage given to secure a note evidencing indebtedness originally made by Mae W. Lamon and S. P. Lamon, her husband, to the Dade County Security Company, a building and loan association under the laws of Florida, in the sum of Twelve Thousand ($12,000.00) Dollars.

The bill of complaint set out certain provisions of the mortgage which covered certain property in Coral Gables, Florida, among which conditions were the following:

"1. That the grantors of the property in the mortgage had become a member of said company and had engaged 240 shares of stock therein, and as such member bid for and received in advance from said Company the sum of $12,000 upon said shares evidenced by the note executed by them. The said grantors in said mortgage deed and the Defendants in the court below, Mae W. Lamon and S. P. Lamon, her husband, agreed with the Company to pay or cause to be paid certainly monthly dues of 'ninety dollars and cents' a share during each year until the dues so paid, together with the profits and other payments, should amount to the advanced sum of $12,000 over and above all lawful charges, liabilities and losses.

"2. The monthly premium bid for said advance in the sum of Thirty Dollars.

"3. The monthly interest at the rate of six per cent per annum, payable monthly, on said money advanced.

"4. All fines, penalties, and other charges which

the mortgagors should incur as a member of said company, in accordance with its by-laws.

"5. All taxes and assessments as they should become due and payable and all insurance premiums necessary to keep said property insured for not less than $12,000.

"6. Such payment eight years from the date of said mortgage as would be sufficient to pay all amounts due upon said advance."

The bill of complaint further alleged that on January 25, 1928, the Honorable Ernest Amos, Comptroller of the State of Florida, having become satisfied from the report of the State Bank Examiner that The Dade County Security Company had become in default and was unable to meet its obligations and was threatened with insolvency, did appoint Frank A. Chase as receiver of The Dade County Security Company, with all the usual powers and duties of a receiver for the purpose of liquidating and closing up the affairs of the said The Dade County Security Company, and that after the appointment of the said Honorable Ernest Amos, Comptroller of the State of Florida, said appointment was confirmed by the Honorable A. J. Rose, one of the Circuit Judges of the Circuit Court of Dade County, Florida, on January 27, 1928, upon a petition of the said Honorable Ernest Amos, Comptroller, and thereafter the said Frank A. Chase duly qualified as such receiver, thereby becoming the receiver of The Dade County Security Company, a building and loan association organized and existing under the laws of the State of Florida.

It was further more alleged that on June 28, 1929, the then qualified and acting receiver of The Dade County Security Company, for and in consideration of the sum

of $7,500.00 paid by the appellant herein and the complainant in the court below, Annie G. Allen, to the said Frank A. Chase, a receiver, did make, execute and deliver to the complainant an assignment of the mortgage hereinbefore described, which said asignment was procured only after an entry of an order on June 15, 1929, by the Honorable H. F. Atkinson, one of the Circuit Judges in and for Dade County, Florida, in said receivership proceedings, which said order provided that the said sale of the said mortgage to the appellant was approved by the Court, and the said Frank A. Chase was authorized to consummate said sale and accept for said mortgage the sum of $7500.00, or its equivalent in stock of The Dade County Security Company at its market price, and the said Frank A. Chase as receiver, was authorized and empowered by the Court to endorse said note and assign said mortgage to the appellant. And said order furthermore provided that the receiver should authorize the appellant herein as the purchaser to collect said indebtedness fixed in said order as $14,046.58, being unpaid principal in the sum of $12,045.00, and unpaid interest, dues and premiums of $2,001.58, interest being computed to May 25, 1929; and the appellant was authorized to foreclose said mortgage, if necessary, in order to collect said indebtedness and interest, *but no fines, penalties or other charges under the foreclosure proceedings should be collected thereunder,* notwithstanding the provisions of said mortgage. Pursuant to said order, the said Chase, as receiver, did deliver to the appellant herein, and the complainant in the court below, an assignment.

The bill of complaint further alleged that the principal sum of $12,000.00 was due and unpaid; that there was interest due in the sum of $1,080.00; that defaults had existed in the payments from February 28, until the time

the bill was filed, and alleged a total amount due of $13,282.70 for principal and interest, $45.00 for insurance premium advanced and $33.00 for continuation of abstract. It was alleged that State and county taxes were delinquent for more than 30 days; and the existence of the obligation on the part of the complainant to pay attorney's fees of $750.00 and that the complainant had paid $97.38 for insurance premiums.

There was a general demurrer filed on October 7th, 1929, by Mae W. Lamon and S. P. Lamon, her husband, the mortgagors, the same being as follows:

"1. There is no equity in the Bill.

"2. It does not appear in and by the said Bill of Complaint that the complainant in this cause holds any right, title or interest in and to the note or mortgage securing the same sought to be foreclosed in said action entitling the said complainant to institute and maintain this cause of action.

"3. It affirmatively appears from the Bill of Complaint that the obligation and mortgage sued upon was assigned contrary to law from The Dade County Security Company, a building and loan association, to the complainant in this cause, and that said complainant did not thereby acquire any right, title or interest in and to the said claim entitling her to institute or prosecute this action."

On the 13th day of November an order was made by the chancellor, as follows:

"The above styled and entitled cause coming on before this court upon the complainant's bill of complaint, the general demurrer of the defendants, Mae W. Lamon and S. P. Lamon, and argument of counsel for the respective parties having first been had, and

it appearing unto the court that Section 6167, Comp. Gen. Laws of Florida, reading as follows:

" 'No evidence of indebtedness taken by any building and loan association for the making of any loan shall be negotiable in form, and whatever be its form such indebtedness shall be non-negotiable in law and no such debt or evidence shall be assignable or transferable in any manner,' is a valid statute, and that same is applicable to the mortgage about to be herewith foreclosed, and that the said Dade County Building and Loan Association was without authority to assign the mortgage and notes herein sought to be foreclosed, and the court being fully advised in the premises,

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED that the said demurrer be and the same is hereby sustained, and that said cause stand dismissed."

Section 26 of Chapter 10028, Acts of 1925, which is brought forward as Section 6176 Comp. Gen. Laws 1927, is as follows:

"Evidence of loans not to be assigned.—No evidence of indebtedness taken by any building and loan association for the making of any loan shall be negotiable in form, and whatever be its form such indebtedness shall be non-negotiable in law and no such debt or evidence shall be assignable or transferable in any manner."

Section 31 of Chapter 10028, *supra,* brought forward as Section 6181, Comp. Gen. Laws 1927, is as follows:

"Insolvency.—On becoming satisfied from the reports furnished to him by an examiner, or upon other satisfactory evidence thereof, that any building

and loan association doing business in this State has become insolvent and is in default, or that the affairs of any building and loan association doing business in this State are in an unsound condition or threatened with insolvency because of illegal or unsafe investments, or that its liabilities exceed its assets, or that it is transacting business without authority of law or in violation of the law, or should that portion of its authorized capital stock specified in Section 6155 become depleted, or if the directors of any building and loan association shall knowingly violate or knowingly permit any of its officers, agents or servants to violate any of the provisions of law relative to building and loan associations, the rights, privileges and franchises shall be subject to be forfeited, and the State Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of such building and loan association and the Comptroller shall proceed in the manner provided by the laws of the State of Florida for the winding up and liquidating of banks, and all the provisions of the laws of the State of Florida applying to the winding up and liquidating of banks shall apply to building and loan associations wherever the same shall be applicable.''

Section 1 of Chapter 6807, Acts of 1915, which is brought forward as Section 6102, Comp. Gen. Laws 1927, is as follows:

''Comptroller may appoint receiver; duties of receiver; notice to bank officers; confirming appointment.—On becoming satisfied from the reports furnished to him by a State bank examiner or upon other satisfactory evidence thereof, that any bank, banker,

banking firm, banking or trust company or corporation doing business in this State under the State laws, has become insolvent and is in default, or that the affairs of any bank, banker, banking firm, banking or trust company or corporation doing business in this State, under such State laws, is in an unsound condition, or threatened with insolvency because of illegal or unsafe investments, or that its liabilities exceed its assets, or that it is transacting business without authority of law or in violation of law, or if the directors of any bank, banking or trust company or corporation, or any banker, or the management of any banking firm doing business in this State under the State laws, shall knowingly violate, or knowingly permit any of its officers, agents or servants to violate any of the provisions of law relative to such bank, bankers, banking firms, banking or trust companies or corporations doing business in this State, the rights, privileges and franchises shall be subject to be forfeited, and the State Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of such bank, and require of him such bond and security as the Comptroller deems proper, not exceeding double the amount that may come into his hands, and such receiver shall be subject to dismissal by the Comptroller, whenever in his judgment such dismissal is deemed necessary or advisable; when one receiver is dismissed another may be duly designated and appointed. Such receiver, under the direction and supervision of the Comptroller shall take possession of the books, records and assets of every description of such bank, banker, banking firm, bank ing and trust company or corporation, and in his name shall sue for and collect all debts, dues and claims be-

longing to it, and, upon the order of the court of competent jurisdiction may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such bank, banker, banking firm, banking and trust company or corporation, on such terms as the court shall direct; and may, if necessary to pay the debts of such bank, banker, banking firm, banking and trust company or corporation, sue for and enforce the individual liability of the stockholders. Such receiver shall pay all money received by him to the State Treasurer to be held as a special deposit for the use and benefit of the creditors, subject to the order of the Comptroller, and shall also make report from time to time, when called upon, to the Comptroller, of all of his acts and proceedings. The Comptroller, immediately upon appointing such receiver, shall serve notice upon the president, or upon any vice-president or cashier, or upon any director or other person having the charge or management of any such bank, banker, banking firm, banking or trust company or corporation, informing him, or them, in such notice of his action in appointing such receiver and notifying him or them or it that he would apply on a date therein named, not to exceed ten days from the date of service of such notice, to some circuit judge having jurisdiction over the same, for an order confirming his action and the appointment of a receiver for such banking institution; and such bank, banking firm, or banking or trust company or corporation may, at such hearing, contest before such circuit judge the rightfulness and legality of such action of the Comptroller in appointing such receiver.''

We find that cases from other jurisdictions can be of little assistance to us in determining the rights of the

parties in the instant case. The cases in other jurisdictions have been determined, as must this case, upon the construction of the statutes applicable to the matter under consideration.

It is entirely clear that a building and loan association existing under the laws of the State of Florida may not lawfully negotiate, transfer or assign any evidence of indebtedness or any mortgage given to secure such evidence of indebtedness while such institution is a going concern as such transactions are prohibited by the provisions of Section 6176 Comp. Gen. Laws.

When, however, a building and loan association has become so involved that it becomes necessary for the Comptroller to assume physical control and management of its affairs to wind up its business, we must then look to other provisions of the statute to ascertain in what may be done with the assets of such building and loan association under these conditions and we find that under the provisions of Section 6181 Comp. Gen. Laws the Comptroller is directed to proceed in the manner provided by the laws of the State of Florida for the winding up and liquidating of banks, and all the provisions of the laws of the State of Florida applying to the winding up and liquidating of banks shall apply to building and loan associations wherever the same shall be applicable. Then we turn to Section 6102 Comp. Gen. Laws which was Section 1 of Chapter 6807 Acts of 1915, and we find, as above quoted, that the Comptroller may appoint a receiver who shall take possession of the books, records and assets of every description of the institution and in his name sue for and collect all debts, dues and claims belonging to it, and upon order of the court of competent jurisdiction *may sell or compound all bad or doubtful debts,* and, on a like order, may

sell all personal and real property of such institution on such terms as the court may direct.

The power to sell an asset necessarily carries with it the power to assign that asset if it happens to be a chose in action. It appears clear to us that when we construe together the provisions of the three sections hereinabove quoted, that the receiver of the building and loan association was lawfully authorized by the order of court issued to him to that effect to sell and assign the mortgage and notes involved in this suit and that, therefore, the demurrer should have been overruled. Certainly it is not contemplated by the statute that the receiver of a building and loan association shall continue to run the institution as and for the purpose for which it was created, but it is the duty of the receiver under the directions of the Comptroller to wind up the business of the institution by converting the assets into cash as rapidly as is practical and making such settlement as is possible with stockholders and creditors of the institution. Therefore, it appears that the legislature has wisely provided for the lawful sale and assignment of all the assets of the institution coming into the hands of a receiver and that as a safe-guard in such matters it is further provided that such sales and assignments may only be made when ordered and approved by the court of competent jurisdiction.

For the reason stated, the order appealed from should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.